**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOCTORS' HOSPITAL OF MODESTO, INC., Respondent.**

**No. 72-1405.**

United States Court of Appeals, Ninth Circuit.

Dec. 27, 1973.

Vivian A. Miller (argued), National Labor Relations Board, Washington, D. C., Roy O. Hoffman, Director, Region 20, NLRB, San Francisco, Cal., for petitioner.

J. Richard Thesing (argued), Littler, Mendelson & Fastiff, San Francisco, Cal., California Nurses Ass'n, San Francisco, Cal., for respondent.

Before MERRILL, CARTER and GOODWIN, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

In this case, the court of appeals reviews the actions of the National Labor Relations Board in a representation proceeding and an unfair labor practice proceeding for refusal to bargain. The questions presented concern the Board's power and expertise in determining (1) whether in a proper bargaining unit certain employees should have been excluded as "supervisors," and (2) whether an election was impaired because certain nurses voted subject to challenge, and because eligible nurses allegedly were prevented from voting by a descriptive error of classification in the Board's Decision on Review. We enforce the order.

The employer operates a proprietary hospital for approximately 150 patients. It has the facilities customarily found in a general hospital, including operating and recovery rooms, an obstetrical department, and an intensive care/cardiac care unit (IC/CCU).

The levels of nursing management authority in the hospital were:

First level: The director of nurses (1 in number);

Second level: A day (A.M.) supervisor, an afternoon (P.M.) supervisor, and a night supervisor (3 in number);

Third level: Operating room supervisor, recovery room head nurse, obstetric supervisor, IC/CCU head nurse, central supply supervisor (5 in number); and floor head nurses on day (A.M.) duty in the A, B, C and D wings (4 in number)

The hospital is staffed with 40 full-time registered nurses, 32 regular part-time registered nurses, and eight registered nurses who work sporadically on an emergency basis; 85 full-time and part-time licensed vocational nurses (LVN's); 90 full-time and part-time nurses aides; and 50 orderlies and other service and maintenance employees.

This proceeding began on May 8, 1968, by the filing of a petition for an election by the California Nurses Association (hereafter C.N.A.), seeking to represent all the employer's *registered nurses*. Originally the employer contended that *all registered* nurses were acting in a supervisory capacity and thus were not "employees" within the meaning of the National Labor Relations Act.

Following a hearing, the Regional Director for Region 20, on June 28, 1968, issued a Decision and Direction for an election in which he found the appropriate bargaining unit.

The employer Doctors' Hospital, requested Board Review and on April 14, 1969, the Board issued its Decision on Review, reported at 175 N.L.R.B. 354. It affirmed the Regional Director's findings, with certain exceptions. Contrary to the Regional Director's Decision, the Board found that the head floor nurses on A.M. duty in A to D wings of the hospital and the operating room supervisor were "supervisors" within the meaning of Sec. 2(11) of the Act, 29 U.S.C.A. § 152(11),[1] and excluded them from the bargaining unit. The Board was unable to determine from the record whether certain other nurses— the obstetric supervisor, the obstetric "charge" nurses, and the recovery room head nurse—were "supervisors" within the Act and permitted them to vote, subject to challenge. The Board inadvertently stated that there was a head floor nurse on duty on *each* of the A.M., P.M. and night shifts.[2]

On May 12, 1969, the Board conducted the election. Of the 60 ballots cast, 13 were for the union, 18 were for no union representation, and 29 were challenged.

A hearing was held on the challenges and a Hearing Officer, on August 22, 1969, issued a report recommending that the challenge to the ballots of the recovery room head nurse and obstetric supervisor be sustained on the ground they were "supervisors" under the Act; that the challenges to the ballots of five obstetric nurses be overruled on the ground that they were not "supervisors"; and that the remaining 22 challenges be overruled.

The employer sought and obtained Board Review of these recommendations. On June 22, 1970, the Board issued a Supplemental Decision, reported at 183 N.L.R.B. No. 94. It adopted the Hearing Officer's recommendations to sustain the challenges to the ballots of the obstetric supervisor and the recovery room head nurse. It also sustained the challenge to the ballot of the intensive care/cardiac care unit (IC/CCU) head nurse on the ground that her duties had changed since its earlier decision. The Board overruled the remaining challenges and directed that the 26 chal-

---

1. Sec. 2(11) of the Act, 29 U.S.C.A. § 152(11):

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

2. The Board's Decision contained an inadvertent statement to the effect that "On duty in each wing [A, B, C and D wings] on *each shift* is a registered nurse who has the title 'floor head nurse' . . . ." (Emphasis supplied).

It was clear that the floor head nurse in charge during the A.M. shift was a "supervisor." The Board's statement implied that the floor head nurses in charge on the P.M. and night shifts were also "supervisors." The employer seized on this statement to contend that the nurse "in charge" on the P.M. and night shifts was a "supervisor."

lenged ballots be counted. The Board corrected its error as to the "charge" nurses on duty on the P.M. and night shifts and held they were not supervisors and were entitled to vote.

On June 30, 1970, the Board issued a revised tally showing 57 valid ballots cast; 29 for the union and 28 against it. On July 7, 1970, the Board certified the union, C.N.A., as the bargaining representative of the employer's registered nurses in the unit found appropriate.

The employer filed objections to conduct affecting the May 12, 1969, election, which the District Director rejected as untimely filed. The Board, on August 20, 1970, denied a motion to revoke and withdraw the certification of C.N.A. The employer refused to bargain on the ground the certification was invalid.

On September 15, 1970, the C.N.A. filed an unfair labor practice charge under Section 8(a)(5) and (1) of the Act, 29 U.S.C.A. § 158(a)(5) and (1). The employer conceded its refusal to bargain but contended the certification was invalid on the ground that the Board's eligibility findings were improper, that the Board erred in permitting votes subject to challenge, and that the descriptive error in the Decision on Review caused certain eligible voters to refrain from voting.

A Trial Examiner conducted a hearing and on May 5, 1971, filed his findings and Decision. The Trial Examiner listed the four contentions of the employer: (1) That the Hearing Officer in the original hearing on May 24, 1968, restricted the employer's presentation of evidence; (2) That the Board by its April 14, 1969, Decision (175 N.L.R.B. 354) prejudiced the election and caused eligible voters to refrain from voting by its action as follows: (a) The IC/CCU head nurse was included in the unit; (b) The obstetric supervisor, the recovery room head nurse, and the "charge" nurses were permitted to vote, subject to challenge; (c) The Board's admittedly erroneous statement in its April 14, 1969, Decision classified as head floor nurses those nurses who worked and were "in charge" on the P.M. and night shifts; (3) That the Board's Supplemental Decision (183 N.L.R.B. No. 94) improperly included within the unit registered nurses who worked as "charge" nurses in IC/CCU and on floors and wings during the P.M. and night shifts, and registered nurses who worked as relief for the obstetric supervisor; (4) That the Regional Director erred in rejecting the employer's objections to the election as untimely filed; and that the Board erred in the denial of the employer's motion to revoke the certification.

The Trial Examiner ruled that contentions Nos. (1), (3) and (4) had been previously ruled on by the Board and that contention No. (2) (concerning prejudice to the election) was not well taken.

On October 20, 1971, the Board summarily affirmed and ordered the employer to bargain with the C.N.A. 193 N.L.R.B. No. 123.

The Board petitioned for enforcement of its order to bargain. The record was filed on April 19, 1972. The Board's brief here was filed over three months later, on July 31, 1972. The employer's brief was filed on November 16, 1972, three and one-half months after the filing of the N.L.R.B. brief. The panel of this court heard argument on December 10, 1973, five years and seven months after the petition for election filed May 3, 1968, which initiated this proceeding.

The court accepts responsibility for being unable to calendar the case for over a year after the last brief was filed. We do not pass judgment as to fault on the time elapsed until the last brief was filed. But the total time elapsed is too long.

We now have for review both the representation and the unfair labor practice proceedings.

The employer now makes two major contentions: (1) That a significant number of supervisors were improperly included in the unit, and (2) the Board's admittedly inaccurate description of

classifications eligible to vote impaired the election process.

The employer's first contention centers upon the relief head nurses, the obstetric nurses, and the relief IC/CCU head nurse on the P.M. and night shifts, and the "charge" head nurses (those in charge of wings or floors on the P.M. and night shifts) who were included in the unit.

The unit as finally established *excluded* the three top levels of nursing management and *included* the other full-time and part-time registered nurses, with the exception of the eight emergency nurses who worked sporadically.

Thus the Board found 13 nurses were supervisors under the meaning of the Act. The employer is now urging that at least 35 of its 40 full-time and 32 regular part-time nurses (35 of 72) are supervisors.

The employer contends that the registered nurses presently in dispute are "supervisors" because they may assign and direct auxiliary personnel such as licensed vocational nurses (LVN's) and nurses aides, *or* because they periodically relieve nurses found to be supervisors.

■ The Board has a "special function" of applying the "general provisions of the Act to the complexities of industrial life." N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 236, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). Where, as here, the specific issue involves the application of a broad statutory term ("supervisor") and the Board has the authority and duty to make the interpretation in the first instance, its "determination . . . is to be accepted if it has 'warrant in the record' and a reasonable basis in law." N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 861, 88 L.Ed. 1170 (1944). See also, N. L. R. B. v. United Insurance Co., 390 U.S. 254, 260, 88 S. Ct. 988, 19 L.Ed.2d 1083 (1968).

■ The burden is on the employer to prove the Board was wrong. The Board has a "wide degree of discretion" granted it to regulate and supervise elections. N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946). See also, N. L. R. B. v. Waterman Steamship Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940).

■ The leadman or straw boss may give minor orders or directives or supervise the work of others, but he is *not necessarily* a part of management and a "supervisor" within the Act. The fact that nurses are highly trained professionals and occasionally use independent judgment does *not necessarily* make them part of management or "supervisors" under the Act. See Ross Porta-Plant, Inc. v. N. L. R. B. (5 Cir. 1968), 404 F.2d 1180, 1182; Northern Virginia Steel Corp. v. N. L. R. B. (4 Cir. 1962), 300 F.2d 168, 172; N. L. R. B. v. Security Guard Service (5 Cir. 1967), 384 F.2d 143, 149; N. L. R. B. v. Parma Water Lifter (9 Cir. 1954), 211 F.2d 258, 261, cert. denied, 348 U.S. 829, 75 S.Ct. 51, 99 L.Ed. 654; N. L. R. B. v. Swift & Co. (9 Cir. 1957), 240 F.2d 65, 66–67; N. L. R. B. v. Brown & Sharpe Mfg. Co. (1 Cir. 1948), 169 F.2d 331, 334.

■ We rely on the Board's expertise in this type of problem. On the whole record, the Board did not abuse its discretion, and its fact-finding was not clearly wrong.

■ As to the employer's second contention, we hold the Board properly found that the election was not impaired because certain nurses were permitted to vote subject to challenge. Such challenge procedures are part of a longstanding practice of the Board. The challenge procedures will not be disturbed except for an abuse of discretion. N. L. R. B. v. Corral Sportswear Company (10 Cir. 1967), 383 F.2d 961, 965; *see* Riverside Press, Inc. v. N. L. R. B. (5 Cir. 1969), 415 F.2d 281, 282–284, cert. denied, 397 U.S. 912, 90 S.Ct. 915, 25 L.Ed.2d 94.

On the whole record, the employer never identified the nurses who allegedly

engaged in union activity, or proved that nurses permitted to vote subject to challenge, who were later found to be supervisors, had participated in the union pre-election campaign, and that this had a coercive impact on the employees' votes.

 Nor did the Board's admittedly inaccurate statement in its April 14, 1969, Decision require the Board to accept the employer's contentions that the "charge" nurses were confused and, as a consequence, refrained from voting.

The Board's official election notice, posted on the employees' bulletin board, properly listed the nurses who were ineligible to vote. It did not list "charge" nurses as excluded.

Any confusion as to eligibility was directly attributable to the employer's election campaign. Again we rely on the Board's expertise. The Board's decision was not erroneous.

Enforcement granted.