NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BIG THREE INDUSTRIES, INC., Respondent.

No. 77–1704.

United States Court of Appeals, Ninth Circuit.

Aug. 20, 1979.

---

**900**

Alan Banov, N. L. R. B., Washington, D. C., for petitioner, Elliott Moore, Washington, D. C., on brief.

Charles R. Vickery, Jr., Vickery Law Corporation, Houston, Tex., on brief for respondent.

Before HUFSTEDLER and TANG, Circuit Judges and GRAY *, District Judge.

TANG, Circuit Judge:

The respondent, Big Three Industries, refused to bargain with the Union [1] after the Union had been certified as the employees' exclusive bargaining representative by the National Labor Relations Board. The Board found that Big Three had violated § 8(a)(5) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and 158(a)(1), by its refusal to bargain, and now

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

petitions for enforcement. We order that enforcement be granted.

Big Three sells industrial gases and welding equipment, which it manufacturers at a plant in Long Beach, California. In 1975 the Union filed a representation petition with the Board, seeking to be certified as the exclusive bargaining representatives of a group of employees who worked at the Long Beach plant. Prior to the representation election, the parties agreed that the appropriate bargaining unit included:

> All production and maintenance employees, shipping and receiving employees, plant clerical employees, warehouse and truckdriver employees employed by the Employer at its 2445 South Street, Long Beach, California, location; excluding all salesmen, office clerical employees, guards and supervisors as defined in the Act, as amended.

Accordingly, the Regional Director conducted an election of the stipulated bargaining unit. Fifteen employees voted. Six votes were cast in favor of the Union, two votes were cast against it, and seven votes were challenged by the Union. Because the challenged ballots were sufficient to affect the outcome of the election, the Regional Director ordered a hearing to determine whether the challenged voters should be included in the stipulated bargaining unit. The Hearing Officer recommended that the Board sustain the Union's challenges to five of the seven voters, finding that Patricia Conners and Charles Kenner were supervisors, that Kathie Bostic and Carol Frost were office clerical employees, and that Darrel Wilson lacked sufficient community of interest to be included in the appropriate unit. The Hearing Officer found that the remaining two challenged voters shared a sufficient community of interest with the plant office clericals and overruled the Union's challenge to their eligibility. Because these two ballots were

1. Chauffeurs, Salesdrivers, and Helpers Local 572, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

insufficient to affect the outcome of the election, the Hearing Officer recommended that the ballots not be opened, and that the Board issue a Certificate of Representative to the Union.

Big Three filed exceptions to the Hearing Officer's finding that Kenner, Bostic, Frost, and Wilson should not be included in the bargaining unit. The Board, however, adopted the findings and recommendations of the Hearing Officer and issued a Certificate of Representative to the Union.

■ Apparently to gain review of the certification, Big Three refused to bargain with the Union.[2] The Board issued a complaint and found that Big Three's refusal to bargain violated §§ 8(a)(5) and 8(a)(1) of the National Labor Relations Act. The Board now seeks to enforce its bargaining order. Because the Act is violated only if the Union was a valid representative, the sole issue presented for review is whether the Board properly certified the Union as the representative of the stipulated bargaining unit. The validity of the certification in turn depends on whether the Board correctly sustained the Union's challenges to the ballots of Kenner, Bostic, Frost, and Wilson. See NLRB v. Adrian Belt Co., 578 F.2d 1304, 1308 (9th Cir. 1978). We find that the Board properly sustained the challenges and enforce the Board's order as modified.

■ As we have reiterated on numerous recent occasions, our review of the Board's decisions regarding union certification is a very limited one. E.g., NLRB v. Morse Shoes, Inc., 591 F.2d 542 (9th Cir. 1979); Oshman's Sporting Goods, Inc. v. NLRB, 586 F.2d 699, 702 (9th Cir. 1978).

The Board is presumed to have certain expertise in this area and we will defer to the Board's decisions unless it has committed an abuse of discretion. Pacific Southwest Airlines v. NLRB, 587 F.2d 1032, 1037 (9th Cir. 1978); Adrian Belt Co., 578 F.2d at 1308. The Board's findings of fact are conclusive if supported by substantial evidence, e. g., Universal Camera v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and unless clearly arbitrary or capricious, the Board's legal conclusions concerning the appropriateness of the bargaining unit will be credited on appeal. Pacific Southwest Airlines, 587 F.2d at 1037. Mindful of our limited role on review, we consider whether the Board properly sustained the union's challenges to the four employees.

I

Charles Kenner

■ Supervisors are not "employees" under the National Labor Relations Act,[3] and therefore, Kenner was properly excluded from the bargaining unit if the Board was correct in concluding he was a supervisor. See NLRB v. Doctors' Hospital of Modesto, Inc., 489 F.2d 772 (9th Cir. 1973). Because the Board has the authority and duty to determine the application of the term "supervisor" in the first instance, we will generally defer to its interpretation if it has a "reasonable basis" in law. Id. at 776. See Laborers & Hod Carriers Local 341 v. NLRB, 564 F.2d 834, 837 (9th Cir. 1977).

With respect to Kenner, the Board made the following findings. Kenner was an hourly-paid employee who worked in the warehouse area in a position which carries the title of warehouse foreman or supervi-

---

**2.** Direct review of a unit determination is unavailable. To obtain review, the employer must refuse to bargain and raise the issue in the subsequent unfair labor practice proceedings. NLRB v. Adrian Belt Co., 578 F.2d 1304, 1308 n. 3 (9th Cir. 1978).

**3.** Section 2(11) of the Act, 29 U.S.C. § 152(11) provides:
> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or

discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Only one of the powers set forth in § 2(11) need be present to qualify an employee as a supervisor. NLRB v. Gray Line Tours, Inc., 461 F.2d 763, 764 (9th Cir. 1972).

sor. Kenner described himself as an intermediary between Dean Dapkewicz, the general manager, and the warehousemen and drivers. Dapkewicz spends only about ten minutes a day in the warehouse, and as a result, Kenner reports to him about what goes on in the warehouse.

The men at the warehouse look to Kenner as the boss. Kenner prepares driver route sheets, and otherwise directs the men on the work to be done. If an employee disobeys Kenner's instructions, Kenner will report him to Dapkewicz, and on at least one occasion, Kenner issued a written reprimand. Kenner also writes reviews of each employee for consideration of wage increases. When the employees are ill or need to leave work early, they report to Kenner. With the approval of Dapkewicz, Kenner determines when overtime is needed.

Kenner assists Conners in the hiring of new employees. Kenner talks to the prospective employee, explains the job, and gives Conners his opinion of the person. He once approved the hiring of a warehouseman.

Kenner also performs work that other employees in the bargaining unit perform. He spends about 60% of his time pumping gases and painting and valving cylinders. Occasionally, he will help the drivers load their trucks.

■ Big Three argues that Kenner was merely a rank and file production worker. In support of this argument, it emphasizes the evidence that Kenner spends a considerable time performing the same tasks as other employees in the agreed unit. It also questions whether Kenner exercised "independent judgment," see 29 U.S.C. § 152(11), because Kenner's opinions regarding hiring and discipline appear advisory.[4]

■ Having reviewed the record of the hearing, however, we find that the Board's findings were supported by substantial evidence, and conclude that the Board acted

within its discretion in finding that Kenner was a supervisor. The fact that Kenner directs the unit employees on a daily basis, administers sick leave and overtime, and assists in the hiring, discipline and merit review of the employees is sufficient to make Kenner a supervisor. See Dynamic Machine Co. v. NLRB, 552 F.2d 1195 (7th Cir.) cert. denied, 434 U.S. 827, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); NLRB v. Broyhill Co., 514 F.2d 655, 658 (8th Cir. 1975). The fact that Kenner spends part of his time doing work performed by unit employees does not alter this conclusion. See NLRB v. Fullerton Publishing Co., 283 F.2d 545, 550 (9th Cir. 1960).

## II

### Kathie Bostic and Carol Frost

The Board found that Bostic and Frost were office clericals, and thus were not included in the agreed bargaining unit. Big Three contends that Bostic and Frost were eligible plant clericals. It argues that "the community of interest" benchmark is controlling only where the Board is determining the appropriateness of a unit, and not where, as here, the types of employees to be included in the bargaining unit have already been stipulated. The issue, Big Three argues, is whether Bostic and Frost come within the definition of a "plant clerical."

■ We disagree with the approach advanced by Big Three. In Pacific Southwest Airlines, we discussed extensively the considerations relevant in determining whether employees are plant clericals or office clericals. We recommended a "direct approach" in making this determination: do the employees share a substantial community of interests to justify their inclusion in the unit? Pacific Southwest Airlines, 587 F.2d at 1040. See Adrian Belt Co., 578 F.2d at 1312. This direct approach we found preferable to the "definitional" approach of the kind that Big Three advocates. See

---

4. Big Three's argument to the contrary, the fact that the Board did not explicitly express its result in the terminology of "independent judgment" is immaterial where its findings taken as

a whole show the existence of independent judgment. See Dynamic Machine Co. v. NLRB, 552 F.2d 1195, 1201 (7th Cir.) cert. denied, 434 U.S. 827, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977).

*Pacific Southwest Airlines,* 587 F.2d at 1040. This means that there is no single, all-encompassing description or definition of what constitutes a plant or office clerical. Instead, a clerical can be characterized as "plant" or "office" only after a sufficient analysis of whether the employee has a sufficient community of interest with workers in the proposed bargaining unit.

In *Pacific Southwest Airlines,* we identified and applied certain factors for undertaking this analysis.[5] Our application of these factors to the findings of the Board leads us to conclude that the Board properly determined that Bostic and Frost were office clericals.

Probably the most significant element of common interests among employees is similarity in their skills, duties and working conditions. *Id.* at 1042. The Board's findings of fact suggest that the differences between Bostic's and Frost's skills, duties and working conditions are greater than their similarities.

Bostic and Frost had similar benefits, insurance, pension and vacation arrangements as the other unit employees. The Board, however, found that they differed from the other workers in other important respects. Bostic and Frost worked at desks located in the office area of the Big Three offices. Bostic had the title of secretary/receptionist and her desk was located in the main reception area of the offices. Frost had the title of secretary and was located in the enclosed main area of the offices. The warehouse, although a part of the same building, was located in the rear of the plant. Unlike the production workers whose day began at 6:30 and who worked for ten-hour shifts, Bostic and Frost typically maintained an 8:00 to 5:00 P.M. routine.

Bostic's duties were also marginally related to the actual production operation. Bostic worked in the office all day long. She answered phones and functioned as a recep-

tionist. She picked up and opened the mail each day, prepared expense checks for Dapkewicz's signature, and typed letters for Dapkewicz and Conner. She photocopied and filed shipping orders and handled occasional accident insurance forms by handing them out to Kenner or one of the individual drivers.

Frost's duties were more closely related to production. Half of Frost's working day was occupied by "cylinder control," i. e., checking all the shipping paperwork regarding the cylinder movement from the warehouse to the customers and their return. The other half of Frost's time, however, was spent doing general clerical work of filing and typing. For instance, Frost checked all the hourly timecards after they had been approved, made credit reference checks for Conners, answered the telephone when Bostic was unable, typed up rate quotations for Conners's approval and dispensed supplies for the drivers. Thus, despite some similarity in Frost's duties, her duties were also highly distinguishable from those directly related to production, especially in light of the fact that Frost utilized traditional office skills and was segregated from the production employees. *Id.* at 1042.

A second factor, integration of functions and personnel, *see id.,* also points in the direction of the Board's conclusion. The Board found, and the record supports, that Bostic and Frost spent almost all their total working time in the office away from the warehouse area. Their contact with the warehousemen and drivers was minimal. There was no need to contact the warehousemen in checking the shipping orders, and most interaction with them was limited to such tasks as preparing insurance forms. Although some of Bostic's and Frost's work complements that of the production employees, it is not integrated with it in the sense that interaction between the clericals and the production employees is necessary for

---

**5.** These factors are (1) similarity in employee skills, duties and working conditions; (2) integration of function and personnel; (3) employees organizational framework; (4) employee choice; (5) extent of union organization; (6) bargaining history. *Pacific Southwest Airlines,* 587 F.2d at 1038.

the other to perform their duties. There was not the "frequent, personal contact" that characterizes true plant clericals. *Id.*

A third relevant factor is the employer's organizational framework. This factor also supports the Board's determination. The immediate supervision of Bostic and Frost was different. The production employees, as discussed, reported to Kenner. Bostic, however, reported to the general manager, Dapkewicz. Frost reported directly to Conners. Although both Bostic and Frost had occasional contact with Kenner, neither was accountable to him.[6]

In summary, the Board's findings of fact support the conclusion that Bostic and Frost lacked a sufficient community of interest with the other unit employees to warrant their conclusion as plant clericals. The Board did not err in characterizing Bostic and Frost as office clericals.

The Union received six of the eight counted votes. Assuming that the two employees whom the Union unsuccessfully challenged would have voted against the Union, Big Three was required to persuade us that the Board incorrectly sustained at least two of the challenges. Having determined that the Board correctly sustained the challenges to Kenner, Bostic and Frost, the certification of the Board was proper and the Board's bargaining order must be enforced.

Enforcement Granted.

---

6. Evidence of the three arguably less important factors identified in *Pacific Southwest Airlines,* 587 F.2d at 1044–45—employee choice, extent of union organization, and bargaining history— is inconclusive in the present case. In the circumstances of this case we do not consider the omission of this evidence significant. All parties should be mindful, however, of establishing a complete record of all these pertinent factors at the time of the hearing.