**WALLA WALLA UNION–BULLETIN, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–3656.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1980.

Decided Oct. 29, 1980.

---

Thomas A. Lemly, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for petitioner.

Richard Cohen, Washington, D.C., argued, for respondent; Elliott Moore, NLRB, Washington, D.C., on brief.

Before ANDERSON and SKOPIL, Circuit Judges, and BYRNE,* District Judge.

SKOPIL, Circuit Judge:

## INTRODUCTION

The Walla Walla Union–Bulletin petitions for review of an order of the National Labor Relations Board, 239 NLRB 24 (1978). The Board cross–petitions for enforcement. The Board found that the Union–Bulletin violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), by refusing to bargain with a newly certified union composed of the newspaper's employees. The Union–Bulletin argued that the Board improperly included managerial and supervisory personnel in the bargaining unit.

We find substantial evidence in the record to support the Board's conclusion that the photo editor, sports editor, and wire editor are not supervisory personnel. They were properly included in the bargaining unit. We do not find, however, substantial evidence to support the Board's determination that the editorial editor was properly included in the unit. An examination of the duties and responsibilities of the editorial editor supports only a finding that he is a managerial employee, excludable from the bargaining unit. The Board's order is enforced in part and denied in part.

## FACTS

The Walla Walla Union–Bulletin publishes an evening newspaper. A group of its employees filed a petition with the NLRB seeking certification as the collective bargaining representative of certain "newsroom employees". The unit was described as "all full–time, wage–earning" members of the newsroom staff with the exception of the managing editor and news editor. Included were all reporters, photographers, and other editors. The Union–Bulletin argued that the editorial page editor should have been excluded as a "managerial" employee, and the photo, sports, and wire editors should have been excluded as "supervisory" employees.

After conducting a hearing, the Regional Director determined that the four editors should be included in the petitioned unit. The Union–Bulletin's request for review was denied by the NLRB.

A certification election was held. Sixteen ballots were cast. Eleven were in favor of the union and one opposed. The Union–Bulletin challenged the four remaining ballots cast by the editors. The Board certified the union as the exclusive bargaining representative.

The Union–Bulletin refused to bargain with the union, asserting that the issue of inclusion of the supervisory and managerial employees must first be resolved. The union filed an unfair labor charge, alleging that the refusal to bargain violated sections 8(a)(5) and (1). The Union–Bulletin admitted that it refused to bargain but denied that it violated the Act. It argued that the refusal to bargain was justified by the Board's alleged error of including the four contested editors in the bargaining unit.

* Honorable Wm. Matthew Byrne, Jr., United States District Judge for the Central District of California, sitting by designation.

The Board determined that section 8(a)(5) and (1) violations had occurred and granted summary judgment. The Board found that the Union–Bulletin did not allege newly discovered or previously unavailable evidence or circumstances. All issues raised by the Union–Bulletin were or could have been litigated in the prior representation proceeding. The Union–Bulletin promptly sought review in this court. ·

## STANDARD OF REVIEW

■ The NLRB is empowered to determine the composition of an appropriate bargaining unit. 29 U.S.C. § 159(b). The Board is given broad discretion in determining the appropriate unit and, unless clearly arbitrary, the Board's legal conclusion should be affirmed. *NLRB v. Big Three Industries, Inc.*, 602 F.2d 898, 901 (9th Cir. 1979); *Beck Corp. v. NLRB*, 590 F.2d 290, 292 (9th Cir. 1978); *Pacific Southwest Airlines v. NLRB*, 587 F.2d 1032, 1037 (9th Cir. 1978).

■ The question whether particular employees are supervisory or managerial and therefore excluded from the bargaining unit is one part of the Board's determination of the unit composition. *NLRB v. Adrian Belt Co.*, 578 F.2d 1304, 1311 (9th Cir. 1978). The Board's determination as to any one particular personnel position is one of fact. *Laborers and Hod Carriers Local No. 341 v. NLRB*, 564 F.2d 834, 838 (9th Cir. 1977). The Board's findings of fact are conclusive if supported by substantial evidence in the record viewed as a whole. *Big Three Industries, supra* at 901.

The Union–Bulletin challenged the Board's determination that each of the four contested editors was includable in the unit. The standard of review we apply in this case is whether the Board's determination in each instance is supported by substantial evidence on the record considered as a whole. This court has held that the Board's decisions in this area should be accorded a large measure of deference. *E. g., Arizona Public Service Company v. NLRB*, 453 F.2d 228, 230 (9th Cir. 1971). Nevertheless, the Board's findings are subject to judicial review.

## ISSUES

1. Did the NLRB err in determining that the editorial page editor was not a managerial employee who should be excluded from the bargaining unit?

2. Did the NLRB err in determining that the photo, sports, and wire editors were not supervisory employees who should be excluded from the bargaining unit?

3. Did the employer violate sections 8(a)(5) and (1) by refusing to bargain until the status of the editors were clarified by this court?

## DISCUSSION

### I. *Managerial Employees*

The Board determined and the parties agree that Carroll Clark, the editorial page editor, exercises no supervisory authority. The Union–Bulletin argues, however, that Clark is a managerial employee and should have been excluded from the bargaining unit.

In contrast to "supervisory" employees who are defined by the Act and excluded (in part) from its coverage, "managerial" employees are not defined nor expressly excluded. Nevertheless, managerial employees have been judicially excluded from the Act's coverage. *See NLRB v. Yeshiva University*, 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980); *NLRB v. Bell Aerospace*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Our task is to determine if the Board properly found that Clark was not a managerial employee.

■ Managerial employees "forumulate and effectuate management policies by expressing and making operative the decisions of their employer." *Yeshiva*, 444 U.S. at 682, 100 S.Ct. at 862, quoting *Bell Aerospace*. The specific job title of the employee is not controlling. We must examine the employee's actual job responsibility, authority, and relationship to management. An employee who exercises discretion within or even independently of established employer

policy may be aligned with management. *Yeshiva*, 444 U.S. at 683, 100 S.Ct. at 863. The Board has established no firm criteria for determining when a employee is so aligned with management. Normally an employee may be excluded as managerial "only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Yeshiva*, 444 U.S. at 683, 100 S.Ct. at 862–863 (footnote omitted).

Clark's primary duty is to write editorials and edit other articles appearing in the editorial page. Clark also has responsibility for selecting syndicated columns and editorial cartoons. He attends meetings with other members of an editorial board that approves, by majority vote, editorial topics. Clark's vote carries the same weight as other members of the Board, all of whom are management representatives. Nevertheless, the Union–Bulletin argues that Clark plays a dominant role in these editorial board meetings.

We hold that substantial evidence in the record viewed as a whole does not support the Board's conclusion that Clark was not a managerial employee. He exercises independent discretion and formulates policy independent of his employer. His responsibilities place him in a position of potential conflict of interest between the employer and the union. In such a situation, the employer is properly classified in management. *E. g., Illinois State Journal–Register, Inc. v. NLRB*, 412 F.2d 37, 41 (7th Cir. 1969).

## II. *Supervisory Employees*

Supervisory employees are specifically defined by the Act and excluded in part from its coverage.[1] "Supervisor" is defined in 29 U.S.C. § 152(11):

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The list of functions in section 152(11) is to be read in the disjunctive. The existence of any one of the powers, regardless of the frequency of its exercise, is sufficient to confer supervisory status upon an employee. *NLRB v. St. Francis Hospital of Lynwood*, 601 F.2d 404, 420 (9th Cir. 1979). The "independent judgment" requirement, however, is interpreted to be conjunctive. *Laborers and Hod Carriers Local No. 341 v. NLRB*, 564 F.2d 834, 837 (9th Cir. 1977). Thus the exercise or existence of any one of the enumerated powers combined with "independent judgment" is enough to make one a supervisor. *E. g., NLRB v. Harmon Industries, Inc.*, 565 F.2d 1047, 1049 (8th Cir. 1977); *NLRB v. Gray Lines Tours, Inc.*, 461 F.2d 763, 764 (9th Cir. 1972). Of course, the existence or exercise of such powers must be more than merely routine or clerical in nature (therefore requiring independent judgment). *NLRB v. Parma Water Lifter Co.*, 211 F.2d 258, 261 (9th Cir.), *cert. denied*, 348 U.S. 829, 75 S.Ct. 51, 99 L.Ed. 654 (1954).

The burden is on the employer to prove that the NLRB was wrong in ruling that certain employees were not supervisors. *NLRB v. Doctors' Hospital of Modesto, Inc.*, 489 F.2d 772, 776 (9th Cir. 1973). Furthermore, judicial deference to the Board's expertise is particularly strong since distinctions must be drawn between gradations of authority "so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who [are] supervisors." *NLRB v. Adrian Belt Co.*, 578 F.2d 1304, 1311 (9th Cir. 1978) (citing *Marine Engi-*

---

[1]. "The term 'employee' ... shall not include ... any individual employed as a supervisor...." 29 U.S.C. § 152(3). See 29 U.S.C. § 164(a) for limited protection coverage not relevant in this case.

*neers Ben. Ass'n v. Interlake Steamship Co.,* 370 U.S. 173, 179 at n.6, 82 S.Ct. 1237, 1240, 8 L.Ed.2d 418 (1962)). Nevertheless, the Board's factual determinations are subject to judicial review. *NLRB v. Fullerton Publishing Co.,* 283 F.2d 545, 548 (9th Cir. 1960). We must determine if the record considered as a whole supports the Board's findings on each of the questioned employees. *Arizona Public Service Co. v. NLRB,* 453 F.2d 228, 230 (9th Cir. 1971).

### a. Photo Editor

Ethan Hoffman was hired as photo editor on the recommendation of another photo department employee. Despite the title, the other employee is equally experienced and earns more money than the photo editor. Each works the same hours, keeps time cards, and earns overtime only when authorized by management.

Hoffman is ultimately responsible for the make–up of the newspaper's photo work. He attends daily news meetings but does not attend monthly managerial meetings. He was involved in the hiring of a summer intern, but only to the extent of making a recommendation to the managing editor.

The Board found that Hoffman basically acts as coordinator for photography vis–a–vis the rest of the news department. In practice he does not supervise or discipline other employees. Hoffman was found to share a community of interest with the other staff photographer and with the rest of the news department and was therefore included in the bargaining unit.

### b. Sports Editor

James Reding is primarily responsible for the content and layout of the sports page. One other full–time staff reporter and two part–time casual employees constitute the sports staff. The Board determined that Reding exercised no supervisory authority to hire, fire, discipline, or suspend sports employees. Grievances are handled by the managing editor and not by Reding. Reding receives overtime pay only when authorized by the managing news editor. Based on these findings the Board concluded that Reding was not a supervisor.

### c. Wire Editor

The wire editor, Louise Meade, evaluates copy coming into the newsroom on wire services. She selects important news items and passes them on to the news editor for discussion at the daily news meetings. A rotating staff assistant aids Meade in editing and laying out articles and photographs. The Board found that Meade exercised no statutory supervisory responsibilities.

### d. Summary

The Board examined the responsibilities and activities of each of the questioned employees and determined that none was a supervisor. We find sufficient evidence in the record viewed as whole to support the Board's determinations.

We do not find the Union–Bulletin's reliance on several newspaper cases to be persuasive. *E. g., Wichita Eagle & Beacon Publishing Co. v. NLRB,* 480 F.2d 52 (10th Cir. 1973), *cert. denied* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 758 (1974); *NLRB v. Fullerton Publishing Co.,* 283 F.2d 545 (9th Cir. 1960); *Suburban Newspaper Publication,* 226 NLRB 154 (1976); *Dallas Times Herald,* 126 NLRB 600 (1960). Each case that involves the determination of whether an employee is a supervisor turns on its own particular facts. The newspaper industry is not sufficiently homogeneous to allow us to draw a universally applicable line between supervisory personnel and other employees.

### III. Section 8(a)(5) and (1) violation

The Union–Bulletin argues that it was under no legal obligation to bargain until the supervisory or managerial status of the editors were finally clarified. We have determined that one of the four challenged editors was improperly included in the bargaining unit certified by the Board. We must now determine if the Union–Bulletin committed an unfair labor practice by refusing to bargain with a unit that included that editor.

Congress has not provided for direct judicial review of the Board's bargaining unit

determination. An employer who seeks review of the composition of the bargaining unit must refuse to bargain and then raise the issue as a defense in the subsequent unfair labor practice proceedings. *NLRB v. Big Three Industries, Inc.*, 602 F.2d 898, 901 n.2 (9th Cir. 1979); *Pacific Southwest Airlines v. NLRB*, 587 F.2d 1032, 1035 n.3 (9th Cir. 1978). During Board review of the unfair labor charge, summary judgment may properly be invoked against the employer if a hearing had been held in the representation proceedings and if the employer's only defense was the bargaining unit's appropriateness. *Pacific Southwest Airlines, supra* at 1035 n.4. Review of the Board's order then rests with the courts of appeals.

The Board argues that an employer's refusal to bargain may be an unfair labor practice even if an employee was improperly included in the bargaining unit. The Board relies on *Sakrete of Northern California, Inc. v. NLRB*, 332 F.2d 902 (9th Cir. 1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965). In that case an employer refused to bargain with an apparent card majority bargaining unit because the union attempted to include a supervisor in the unit. This court held that an employer commits an unfair labor practice by refusing to bargain unless it can demonstrate a good–faith belief that majority support did not exist. The test is whether or not the inclusion of the contested employee would have affected the union's majority certification vote. If not, the employer cannot refuse to bargain with the unit. The employer can only object to the inclusion of the contested employee in the unit and cannot refuse to bargain altogether.

■ We note that since *Sakrete* was decided, the Board altered its certification processes. Sakrete was required to recognize and bargain with a unit that presented a card–majority. A refusal to bargain could be justified only by a good–faith belief that the unit lacked majority support. In 1972, the Board announced that employers could force the union, as a condition of

recognition, to demonstrate majority support through Board representation hearings and election. *See Linden Lumber Division v. NLRB*, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974) upholding the change in procedure. We do not find that this change in Board procedure alters the basic assumptions behind *Sakrete*. An employer should not be able to avoid its obligation to bargain with a certified unit by arguing that some employees were improperly included unless the contested employees affect the units majority status. The employer must bargain with the unit but may refuse to bargain over the rights of the contested employees in order to seek judicial review.

We recognize some unfairness in finding that an employer commits an unfair labor practice by refusing to bargain with a unit that is ultimately found to be inappropriate. Nevertheless, we also find it unfair to allow an employer to delay bargaining with a large unit on the chance that one employee may have been improperly included.

In this case, removal of the contested editors would not have affected the election outcome. Since the employer did not state any other defense to its refusal to bargain, a violation of sections 8(a)(5) and (1) was properly found by the Board.

## CONCLUSION

The Union–Bulletin violated sections 8(a)(5) and (1) of the Act by refusing to bargain with the certified unit. Substantial evidence in the record supports the Board's conclusion that the photo, sports, and wire editors were properly included in the unit. We are unable to find, however, substantial evidence in the record to support the Board's determination that the editorial editor was not a managerial employee excludable from the unit.

We deny the Union–Bulletin's petition for review. The Board's order is enforced insofar as it requires the Union–Bulletin to bargain with the union including the photo, sports, and wire editors. It is denied insofar as it includes the editorial editor in the bargaining unit.