692 F.2d 76
 111 L.R.R.M. (BNA) 2981, 95 Lab.Cas. P 13,863
 NATIONAL LABOR RELATIONS BOARD, Petitioner/Cross-Respondent,
and
Millmen, Cabinetmakers and Industrial Carpenters Local No.
550, Intervenor,
v.
ALL-WEATHER ARCHITECTURAL ALUMINUM, INC., Respondent/Cross-Petitioner.
 Nos. 81-7698, 81-7835.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1982.
Decided Nov. 8, 1982.
 
 Kenneth Hipp, Atty., N.L.R.B., Washington, D.C., for the N.L.R.B.
 Frederick A. Morgan, Bronson, Bronson & McKinnon, San Francisco, Cal., for All-Weather Architectural Aluminum.
 On Application for Enforcement and Petition for Review of an Order of the National Labor Relations Board.
 Before KILKENNY and POOLE, Circuit Judges, and WILLIAMS*, District Judge.
 KILKENNY, Circuit Judge:
 
 
 1
 The National Labor Relations Board (Board) seeks enforcement of its order issued against All-Weather Architectural Aluminum, Inc. (All-Weather). All-Weather cross-petitions for review of that order.
 
 FACTS
 
 2
 On November 8, 1979, the Millmen, Cabinetmakers and Industrial Carpenters Local No. 550 (Union) filed a petition with the Board seeking a representative election at All-Weather's two Oakland facilities and two additional facilities operating under the names of In-Sol-Air Glass Co., Ltd. (In-Sol) and Weather-All Products, Inc. (Weather-All). A hearing concerning the proper bargaining unit was held on November 29, 1979. On December 21, 1979, the Regional Director issued a Decision and Direction of Election finding that All-Weather and In-Sol constituted a single employer and that All-Weather and Weather-All also constituted a single employer. The Regional Director ordered elections in two units: Unit A--production and maintenance employees at the All-Weather and Weather-All facilities; and Unit B--production and maintenance employees at the In-Sol facility. The Decision specifically directed "the Employer" to file "an election eligibility list, containing the names and addresses of all eligible voters" with the Board's Regional Office within seven days of the Decision so that all parties to the election would be able to communicate with the voters prior to the election.
 
 
 3
 All-Weather filed a petition for review of the Regional Director's decision with the Board, contending that the Director's single employer findings were improper. The Board denied All-Weather's request for review on February 20, 1980.
 
 
 4
 Meanwhile, on December 28, 1979, the Board's Regional Office received a list of 34 eligible voters working for All-Weather in Unit A. The list did not include Unit A employees at Weather-All's facility, nor did it include Unit B employees at In-Sol. Since the list was incomplete, the Regional Office did not forward it to the Union. On February 29, 1980, the Regional Office received a supplemental list of five Weather-All employees and five In-Sol employees. These additional lists together with the previous list of 34 All-Weather employees were forwarded to the Union. However, the Union received the lists on March 3, 1980, the day before the election.
 
 
 5
 The elections were conducted on March 4, 1980. The Union lost the election in Unit A by a vote of 14-16. It also lost the election in Unit B by a vote of 1-4. The Union filed objections to the election based in part upon the failure to receive the voter lists until the day before the election. On May 29, 1980, the Acting Regional Director issued a Supplemental Decision and Order of Second Election, upholding the Union's voter list objection and directing a new election.
 
 
 6
 On August 25, 1980, the Regional Director issued an order reopening the record to consider "new evidence with respect to the identity, location and operation of the Employer." A hearing was held, and on September 17, 1980, the Regional Director issued a Second Supplemental Decision. He found that All-Weather, Weather-All, and In-Sol remained a single employer "in the form and fashion found in the original Decision." However, he noted that Weather-All and In-Sol had moved their Oakland facilities to a common facility in Vacaville, California, and had integrated their product lines. As a result, the Regional Director redefined the bargaining units. He ordered elections to be held in two new units: Unit A--production and maintenance employees at the Weather-All and In-Sol Vacaville facility; and Unit B--production and maintenance employees at the All-Weather Oakland facilities.
 
 
 7
 The new elections were held on October 15, 1980. The Union lost the Unit A election 6-12, but won the Unit B election 17-11. All-Weather filed objections to the Unit B election claiming that the first election should not have been overturned. On December 19, 1980, the Acting Regional Director issued a Third Supplemental Decision and Certification of Representative in which he rejected All-Weather's objections as having been previously litigated.
 
 
 8
 All-Weather refused to bargain with the Union. After the Regional Director issued a complaint, summary judgment was granted by the Board against All-Weather. The Board's order requires All-Weather to bargain with the Union.
 
 STANDARD OF REVIEW
 
 9
 Review of Board decisions regarding union certification is very limited. NLRB v. Big Three Industries, Inc., 602 F.2d 898, 901 (CA9 1979). "The Board is presumed to have certain expertise in this area and we will defer to the Board's decisions unless it has committed an abuse of discretion." Id.; Pacific Southwest Airlines v. NLRB, 587 F.2d 1032, 1037 (CA9 1978). Accordingly, the party contesting election procedures bears the burden of showing that the Board abused its discretion in resolving election issues. Oshman's Sporting Goods, Inc. v. NLRB, 586 F.2d 699, 702 (CA9 1978).
 
 ISSUE
 
 10
 Whether the Board abused its discretion in overturning the first election because the Union did not receive a list of eligible voters in a timely manner?
 
 DISCUSSION
 
 11
 In Excelsior Underwear, Inc., 156 NLRB 1236 (1966), the Board formulated a rule for prompt disclosure of eligible voters in a pending election. The Excelsior rule requires that within seven days after the Regional Director or Board has directed an election the employer must file with the Regional Director an election eligibility list, containing the names and addresses of all eligible voters. Id. at 1239-40. "Failure to comply with the rule constitutes grounds for setting aside the election whenever proper objections are filed." Id. The purpose of the rule is to provide employees with the opportunity to vote for or against representation under circumstances that are free from interference, restraint, coercion, or other elements likely to impede a free and reasonable choice.
 
 
 12
 This court has approved the use of the Excelsior rule. British Auto Parts, Inc. v. NLRB, 405 F.2d 1182, 1183 (CA9 1968), cert. denied, 394 U.S. 1012, 89 S.Ct. 1625, 23 L.Ed.2d 39. The rule imposes a simple duty upon employers which can be easily satisfied.
 
 
 13
 While the Board has consistently held employers to strict compliance with the requirements of the rule in the absence of extenuating circumstances, Chemical Technology, Inc., 214 NLRB 590 (1974), application has been directed toward objective standards for compliance, without resorting to a mechanical application of the rule. See Sonfarrel, Inc., 188 NLRB 969, 969-70 (1971); Ponce Television Corp., 192 NLRB 115, 115-16 (1971). When the Board finds that an employer failed to fully comply with the rule, it does not automatically overturn the election, but first determines the substantiality of the failure to comply.
 
 
 14
 The substantiality issue is resolved based upon objective factors: "(1) the number of days the list was overdue; (2) the number of days the union had the list prior to the election; and (3) the number of eligible voters in the unit." Wedgewood Industries, Inc., 243 NLRB 1190, 1191 (1979). Substantial failures to comply have been found where the list was not provided to the Union until a few days before the election,[1] or a significant percentage of eligible voters were omitted.[2]
 
 
 15
 All-Weather and Weather-All were deemed a single employer for representation purposes. This created a joint obligation in the Companies to supply a complete list of eligible voters. All-Weather contends that it substantially complied with the Excelsior rule by furnishing 34 names to the Regional Office on December 28, 1979. The Board's finding that it did not substantially comply was based upon a determination that omission of five employees, 13 percent of the eligible voters, was a significant failure to satisfy the rule's requirements.
 
 
 16
 All-Weather was informed that failure to comply would be grounds for setting aside the election.[3] Failing to heed this warning, All-Weather neglected to submit the names until after the Board denied its request for review of the single employer finding. By that time the list was two months overdue and was received by the Union only one day before the election. Thus, All-Weather's actions effectively precluded the Union from using the list in any effective manner.
 
 CONCLUSION
 
 17
 Considering the record as a whole and, in particular, the omission of 13% of the eligible voters, the untimely manner in which the eligibility list was presented to the Union, and the closeness of the election, we hold that the Board did not abuse its discretion in overturning the first election.
 
 
 18
 The application of the Board for enforcement of its order is allowed and the cross-petition of the respondent is denied.
 
 
 19
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 See Chemical Technology, Inc., 214 NLRB 590 (1974) (6 days before the election); Rockwell Manufacturing Co., 201 NLRB 358 (1974) (11 days late); Coca-Cola Co. Foods Div., 202 NLRB 910 (1973) (3 days before the election)
 
 
 [2]
 See Advance Industrial Security, Inc., 230 NLRB 72 (1977) (6% inadvertently omitted); Sonfarrel, Inc., 188 NLRB 969 (1971) (5 employees omitted)
 
 
 [3]
 All-Weather has not indicated that it would have had any difficulty obtaining the names of the omitted employees, nor has it attempted to claim that extraordinary circumstances justified a stay of the Excelsior rule