STATE of Iowa, Iowa Department
of Personnel, Appellant,

v.

IOWA PUBLIC EMPLOYMENT
RELATIONS BOARD,
Appellee,

and

State Police Officers Council,
Intervenor–Appellee.

No. 95–397.

Supreme Court of Iowa.

March 26, 1997.

Thomas J. Miller, Attorney General, and Linny Emrich, Assistant Attorney General, for appellant.

James H. Murphy, Des Moines, for appellee Iowa Public Employment Relations Board.

Pamela J. Prager of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for intervenor-appellee State Police Officers Council.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

This is a public employee bargaining case under Iowa Code chapter 20 (1991). The issue is whether state park rangers are to be excluded from a bargaining unit on the ground that they are "supervisory" employees under Iowa Code section 20.4(2). Following lengthy administrative proceedings, the Public Employment Relations Board (board) ruled that park rangers are not supervisory employees and therefore may be included in the bargaining unit. The district court affirmed, and the State appealed. We initially remanded to the board for additional findings and now affirm the judgment of the district court.

The State is a public employer within the meaning of Iowa Code section 20.3(11). The park rangers, who are employed by the Iowa Department of Natural Resources (DNR), are public employees under Iowa Code section 20.3(10). The intervenor, State Police Officers Council, is an "employee organization" under section 20.3(4) and seeks to add the park rangers to its membership. The State argues that the rangers are "supervisors" under Iowa Code section 20.4(2) and therefore ineligible for inclusion in a bargaining unit.

Section 20.4 provides:

The following public employees shall be excluded from the provisions of this chapter:

1. Elected officials and persons appointed to fill vacancies in elective offices, and members of any board or commission.

2. Representatives of a public employer, including the administrative officer, director or chief executive officer of a public employer or major division thereof as well as the officer's or director's deputy, first assistant, and any *supervisory employees.*

*"Supervisory employee"* means any individual having authority in the interest of the public employer to *hire,* transfer, suspend, layoff, recall, promote, discharge, assign, reward or *discipline* other public employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if, in connection with the foregoing, *exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.*

(Emphasis added.)

Each party puts its own spin on certain italicized words in this definition. The State takes a literal approach: because the rangers hire and discipline DNR attendants and aides, the rangers fit the statutory definition of a "supervisory employee" and therefore are excluded from the bargaining unit.

The board and the intervenor, on the other hand, point to the words "not of a merely routine or clerical nature, but requires the

use of independent judgment" in supporting their position. They contend that the park rangers' authority is so severely limited that any exercise of authority is merely routine or clerical in nature and not the result of independent judgment.

## I. *The Law.*

Our review of this agency action is governed by the Iowa Administrative Procedure Act, Iowa Code § 17A.19. The test is whether the board's decision is supported by substantial evidence in the record made before the agency when that record is viewed as a whole. Iowa Code § 17A.19(8)(f); *City of Davenport v. PERB*, 264 N.W.2d 307, 311 (Iowa 1978). Our public employment bargaining law is written in broad language so as to allow a large number of public employees to be eligible for coverage, and we interpret the exclusions under section 20.4 with that goal in mind. *Iowa Ass'n of Sch. Bds. v. PERB*, 400 N.W.2d 571, 576 (Iowa 1987); *see also NLRB v. Security Guard Serv., Inc.*, 384 F.2d 143, 147 (5th Cir.1967) (supervisor exception under federal act not to be applied broadly).

The definition of supervisory employee in Iowa Code section 20.4(2) is taken from the National Labor Relations Act, and therefore, federal interpretations of that act are persuasive. *City of Davenport*, 264 N.W.2d at 313. The determination of who are supervisors is ordinarily a fact question, and the "[board's] exercise of discretion will be accepted by reviewing courts if it has 'warrant in the record and a reasonable basis in law.'" *Id.* (quoting *NLRB v. Broyhill Co.*, 514 F.2d 655, 658 (8th Cir.1975)). As one federal court has stated,

> judicial deference to the Board's expertise is particularly strong since distinctions must be drawn between gradations of authority "so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who [are] supervisors."

*Walla Walla Union–Bulletin, Inc. v. NLRB*, 631 F.2d 609, 613 (9th Cir.1980) (quoting *NLRB v. Adrian Belt Co.*, 578 F.2d 1304, 1311 (9th Cir.1978)). The burden is on the employer to show that the board was wrong in ruling that employees are not supervisors. *See Walla Walla*, 631 F.2d at 613; *NLRB v. Doctors' Hosp. of Modesto, Inc.*, 489 F.2d 772, 776 (9th Cir.1973).

Under Iowa Code section 20.4(2), a supervisor includes any employee with the authority to perform a number of specified duties. The State relies on only two here: the rangers' authority to hire and discipline DNR employees. Because the statute is worded in the disjunctive, the existence of either of the listed powers will confer supervisory status on the employee (subject to the limitations discussed below). *See City of Davenport*, 264 N.W.2d at 314; *see also Northeast Utils. Serv. Corp. v. NLRB*, 35 F.3d 621, 624 (1st Cir.1994). However, Iowa Code section 20.4(2) restricts the otherwise broad application of the test by also requiring that to be a supervisor the employee in question must (1) have authority (2) to use independent judgment (3) in performing such supervisory functions (4) in the interest of management. These requirements are stated in the conjunctive and must all be established. *City of Davenport*, 264 N.W.2d at 314; *see Security Guard Serv.*, 384 F.2d at 147.

## II. *The Facts.*

The facts found by the board include the following. There are three categories of park rangers: Park Ranger I, II, and III. The board found that each ranger, regardless of classification, is responsible for the daily operation, maintenance, and care of a specified state park. Small parks are managed by a Ranger I, medium-sized parks by a Ranger II, and large parks by one or more Ranger IIIs. All of the rangers live on-site. Each ranger in turn is supervised by one of the Park Management Bureau's four district supervisors, who are supervised by the bureau's chief, who in turn answers to a division administrator.

In small parks, the Ranger I is typically the only full-time state employee on the site. However, many, if not most, of the Ranger IIs and IIIs have the assistance of one or more of approximately forty-six DNR em-

ployees, called park attendants. All rangers typically have temporary employees called aides.

Park attendants, like the rangers, are full-time employees assigned to a specific park. The attendants' duties include physical repair, maintenance, and improvement of the park grounds, facilities, and equipment. Rangers also employ during peak seasons approximately 234 DNR aides. Aides usually begin their employment in May and work through Labor Day.

The duties of a park ranger were found by the board to include four general categories: maintenance or improvement of the park, education and public relations, law enforcement, and "administrative" functions. The "administrative" functions include data collection and preparation of statistical reports, maintaining a fee collection system, maintaining an inventory of the park's property, and accounting for the park's supplies and other property. The ranger's administrative duties also include some hiring and disciplinary authority, as well as supervisory authority over the park attendants and aides.

Rangers have participated as members of panels that interview park attendant applicants. This panel makes a selection recommendation to the bureau chief who in turn forwards a recommendation to the division administrator who actually makes the hiring decision. The division administrator also determines, on the recommendation of the bureau chief, the park to which the newly hired attendant will be assigned.

As to the hiring of DNR aides, the ranger's role is more extensive. The ranger is informed by a supervisor of the number of aides to be allocated to the ranger's park, the number of hours each is authorized to work, and the wage that will be paid. The ranger fills those positions and prepares the hiring documents.

Rangers are charged with insuring that attendants and aides receive DNR-required training in areas such as CPR and first aid. The rangers review the accuracy of time sheets prepared by attendants and aides and examine their travel expense reimbursement requests. Rangers also review attendants' applications for educational assistance or educational leave and pass the applications on to a supervisor for further action.

Rangers perform periodic performance evaluations for the attendants assigned to their parks, review the evaluation with each attendant, and secure the attendant's comments and signature. The ranger then forwards the evaluation up the chain of command for review. There is no evidence concerning what effect the ranger's evaluation has on the continued employment of the attendant. The board noted that there was no evidence as to what role, if any, the rangers played in the preparation of the "performance plan," specifying the attendant's major responsibilities and providing the standards by which the attendant's performance is evaluated.

The record shows that rangers have no authority to independently discharge park attendants. As it is with the hiring of attendants, the division administrator is charged with making discharge decisions. The record showed that at least one recommendation to discharge was made by a park ranger; however, that recommendation was independently reviewed by a higher authority and ultimately rejected.

Rangers do not have authority to independently suspend park attendants. They have been instructed to first consult with their district supervisor who then consults with higher authority before discipline is imposed. There was one instance in the record concerning a ranger who issued a letter of reprimand to a park attendant, but no details were presented as to the disciplinary procedure involving the reprimand.

While no actual examples were shown, a division administrator acknowledged that rangers do possess the authority to discipline *aides;* however, rangers routinely comply with management's expectations and consult with their supervisor before doing so. As the board noted, whether this "consultation" entailed an independent review of the proposed discipline by a supervisor or merely the ranger's communication of a decision already made is not clear.

Rangers are considered to provide the first step of the grievance procedure for employ-

ees who are not covered by collective bargaining agreements. Although grievance filings are uncommon, rangers have in fact answered grievances at the first step of the process. There is only one specific case made of record, and in that case, the employee's grievance was denied by the ranger. There was no evidence presented that rangers are authorized to actually settle grievances by taking remedial action as a result of employee complaints.

■ With the foregoing evidence in the record, the board concluded that park rangers are not supervisors under Iowa Code section 20.4(2). It concluded that, while the rangers assist in the hiring of park attendants and aides and participate in a limited way with disciplining them, the rangers do not have the final authority in hiring or disciplining them. Further, while the rangers direct the work of attendants and aides, in doing so they simply carry out the directions of their supervisors. The rangers are, in the judgment of the board, merely lead employees, not supervisors, because they do not use the "independent judgment" required by section 20.4(2). *See City of Davenport,* 264 N.W.2d at 313.

### III.  *Application of the Law.*

■ As we have held, an employee's identification with management must be substantial, and the authority to perform the hiring or disciplinary functions required by section 20.4(2) must not be merely clerical or routine in nature; the employee must act as the "arms and legs of management." *City of Davenport,* 264 N.W.2d at 313 (quoting *Security Guard Serv.,* 384 F.2d at 147). The board concluded that the rangers did not fill that role here.

We give deference to the board's expertise and its "reasonable range of informed discretion within which to determine who are supervisory employees." *City of Davenport,* 264 N.W.2d at 313. We decline to substitute our judgment for the board's on this issue and therefore affirm.

**AFFIRMED.**