G & W ELECTRIC SPECIALTY COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15376.

United States Court of Appeals Seventh Circuit.

May 3, 1966.

Howard P. Robinson and William P. Richmond, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Harold B. Shore, Attorney, N. L. R. B., for respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of G & W Electric Specialty Company to review and set aside, and upon the cross-petition of the National Labor Relations Board to enforce, an order of the Board issued against the Company. The Board's decision and order are reported at 154 NLRB No. 91.

The Board found that the Company's discharge of employee William Helson was for engaging in an activity which is protected by Section 7 of the National Labor Relations Act and therefore constituted a violation of Section 8(a) (1) of the Act. The Board found an additional but unrelated Section 8(a) (1) violation in the Company's maintenance of a rule prohibiting solicitations of any kind or the circulation of petitions or literature of any nature by employees on company property without approval of the Plant Manager. The Board's order requires the Company to cease and desist from the unfair labor practices found and from in any like or related manner restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act. Affirmatively, the Company is ordered to offer reinstatement to Helson, to make him whole for loss of earnings, and to post designated notices.

■■ The Company concedes that its no-solicitation rule was unlawfully broad but points to the Board's findings that the rule was not involved in the discharge of Helson and has since been replaced with a valid rule, notice of which was posted on the Company bulletin board, as removing any necessity for the Board's action with respect to the rule and affording a basis upon which we should set aside and refuse to enforce that portion of the order relating to and remedial of the no-solicitation rule violation. But it is well settled that compliance does not disentitle the Board to a decree barring resumption of the illegal conduct. N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567–568, 70 S.Ct. 833, 94 L.Ed. 1067; N. L. R. B. v. Marsh Supermarkets, Inc., 7 Cir., 327 F.2d 109, 111; N. L. R. B. v. Chauffeurs, Teamsters & Helpers, Local No. 364, 7 Cir., 274 F.2d 19, 25.

The record discloses that Helson was employed as a draftsman. He did not

belong to a union. The draftsmen and other office workers in the Company's employ were not organized. Helson's discharge had no relation to any "union" activity.

In 1957 employees of the Company organized a credit union, incorporated under the pertinent Illinois statute,[1] in which all employees of the Company were eligible to membership. The Company was not adverse to the establishment of the credit union, and authorized it to use the name "G & W Employees Credit Union", but made it clear that the Company had no desire or intent to become involved in its operation. The Company did co-operate to the extent of permitting the organization to use a conference room at the plant for transaction of its business three times a week, honoring employee requests to make payments to the credit union through salary deductions and accepting items concerning the credit union for publication in the Company newspaper. The Company exercised no control over the credit union, its management, or its operation.

In January 1963, Helson was elected to the board of directors of the credit union and shortly thereafter, he was named to a supervisory committee. His activities on the committee made him unpopular with the other board members. He was critical of the auditing procedures employed and of an interest charge which had been made on a loan to one of the members. The friction which developed finally led to a vote of the directors to suspend Helson from the board. But this action failed to receive ratification by the membership at a September 9, 1963, meeting called for that purpose. Helson, in the interim between the action by the directors and the membership meeting, had prepared and distributed, on the Company premises and during working hours, a circular addressed to member-employees soliciting their support. Several days later the Company vice-president and general manager warned Helson by letter that a repetition of similar activity "will be cause for immediate dismissal".

In November 1963, the directors took action purporting to expel Helson from the credit union. Two days later, Helson, during the lunch period, circulated a petition he had prepared containing a request that a special meeting of the credit union membership be called to consider the manner in which the credit union was being operated and to take corrective action. He circulated the petition in the shop area, and solicited the signatures of employees and foremen. Later that afternoon Helson was discharged.

■ From our examination of the record, and viewing it in the light which it in its entirety furnishes, we are satisfied that there is substantial evidence which supports the Board's finding that Helson was discharged solely because of his solicitation of employee support of the complaints he had raised concerning the manner in which the credit union was being operated. In this connection, Robert Rowan, the supervising engineer, who participated in the discharge, testified that the direct cause of Helson's discharge was "Helson's going into the shop on the noon hour of November 13, 1963" —the occasion of his conversations with employees on the subject of the credit union and his solicitation of their support of his attack on the administration of its affairs. The record reflects concern on the part of Company supervisory officials that Helson's controversy with the credit union management was by his conduct being spread into the shop and that they regarded the injection of this dispute into the work arena as a disturbing influence. In this context, the fact that the tactics and approach employed by Helson may be viewed as being moderate in nature, and that there is evidence of repeated reprimands of Helson for tardiness, for excessive use of Company telephones for personal matters, and for arguing with and refusal to follow the directions of superiors concerning the manner in which work was to be performed,

1. Ill.Rev.Stat.1965, ch. 32, pars. 496.1 et seq.

which factors could have supplied a basis for discharge, do not serve to militate against the Board's finding as to the actual cause of the discharge.

We turn to consideration of the issue of whether the Board's conclusion [2] that the activity for which Helson was discharged constitutes a concerted activity for "mutual aid or protection" within the meaning of Section 7 of the Act, and a discharge therefor a violation of Section 8(a) (1), represents the application of correct legal criteria.

Insofar as here pertinent Section 7 guarantees the right of an employee to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection" and Section 8 (a) (1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce" an employee in the exercise of such right.

The Board's decision expresses the view that the ambit of Section 7 is not confined to "activities which are immediately related to the employment relationship or working conditions, but extends to the type of indirectly-related activity" here involved and that the benefits available through membership in an employee credit union "are close enough in kind and character, and bear such a reasonable connection to matters affecting the interests of employees *qua* employees, as to come within the general reach of the 'mutual aid and protection' the statute is concerned to protect". This Court in N. L. R. B. v. Phoenix Mutual Life Ins. Co., 7 Cir., 167 F.2d 983, had occasion to observe that properly construed Section 7 embraces the right of employees "to engage in concerted activities for their mutual aid or protection even though no union activity be involved, or collective bargaining be contemplated" but the subject matter of the activity there involved was one with respect to which the employees, by virtue of their status as such, "had a legitimate interest in acting concertedly in making known their views to management with-

out being discharged for that interest". There the request was one being addressed to management and its subject bore a reasonable relation to conditions of employment and concerned a matter with respect to which the employer had the power and right to do something about. Here the activity involved no request for any action upon the part of the Company and did not concern a matter over which the Company had control. It is true that the employee-members of the credit union had a legitimate concern in the proper administration of its affairs. But their interest, although mutual, was one arising from their status as borowers or depositor-investors. It was not an interest derived from their status as Company employees or bearing any significant connection to their employment relationship with the Company. The factor of their employee status with the Company served only to identify the group and satisfy the statutory requisite of a common bond essential to the organization of a credit union. It did not identify the Company with the credit union or its management.

None of the cases to which our attention has been called as supporting the Board's position concern activity involving employee interests not subject to some control or influence by the employer. They all involve situations where there was some sort of dispute between the employees and the employer with respect to something relating to working conditions or something incident to the employment relationship although in some instances a third party was involved. Neither the facts nor the rationale involved serve to make any of them controlling here.

■ The sweep of the broad interpretation inherent in the Board's application of the "or other mutual aid or protection" clause to the facts of the instant case gives to that clause a meaning and effect which in our opinion is out of harmony with the immediate context in which the clause appears and which tran-

2. Board Member Howard Jenkins, Jr., dissented therefrom.

scends the subject matter the Act is designed to embrace—labor-management relations.

The range of possible employee mutual interests apart from those which bear a reasonably significant impact upon working conditions or some material incident of the employment relationship is in our opinion a much broader field than Section 7 is designed to encompass.

█ On the facts here involved, we hold that the Board's conclusion that the activity for which Helson was discharged falls within the ambit of Section 7 is erroneous.

The petition to set aside the Board's order is granted except as to that portion of the order relating to the unfair labor practice based on the maintenance of the Company's earlier no-solicitation rule. As to that portion of the order the Board's petition for enforcement is granted.

Order set aside in part and enforced in part.