**KAISER ENGINEERS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 74–3053.**

United States Court of Appeals, Ninth Circuit.

June 29, 1976.

K. P. Richardson (argued), of Thelin, Marin, Johnson & Bridges, San Francisco, Cal., for petitioner.

Jay Shanklin (argued), of N. L. R. B., Washington, D. C., for respondent.

## OPINION

Before BROWNING and KENNEDY, Circuit Judges, and SWEIGERT,* District Judge.

SWEIGERT, District Judge.

This action is before the court pursuant to Sections 10(e) and 10(f) of the National Labor Relations Act (hereinafter, the Act), 29 U.S.C. § 160(e), (f), authorizing review of final orders of the National Labor Relations Board (hereinafter, the Board).

On September 30, 1974, the Board ruled that Kaiser Engineers had violated sections 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. § 158(a)(1), (a)(3), by discharging a civil engineer, one David Allen, and by coercively interrogating and threatening to discipline other employees.

Kaiser Engineers has petitioned this court for review of the Board's ruling, asking that it be set aside. The Board has cross-petitioned for enforcement of the order.

---

* The Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California sitting by designation.

The facts are to the effect that at a June, 1973, meeting of the Civil Engineering Society, composed of Kaiser Engineers employees, Allen informed members that Bechtel, a major competitor of Kaiser Engineers, was applying to the Department of Labor to ease restrictions on the importation of foreign engineers. The matter was discussed at the meeting and the conclusion reached that such action would be contrary to the interests of the engineering profession. The Society then adopted a formal proposal that a letter be sent to United States legislators stating the Society's position. Allen drafted a letter,[1] which was signed by the Society's executive committee, and sent it to three United States Senators and two Congressmen on July 2, 1973.

On July 6th, Fitzgerald, Manager of Industrial Relations for Kaiser Engineers, met with Hughes, Executive Vice-President, and Mauser, Chief Design Engineer and Vice-President, and interviewed each signatory of the letter individually, asking which employees might have read the letter and to whom it had been sent. It was made clear to Allen that Kaiser Engineers considered the letter embarrassing and a very serious matter because it might be construed as indicating that Kaiser Engineers advocated discrimination against foreign engineers and that the sending of the letter was considered grounds for termination. Allen offered to write to the legislators to clarify any ambiguities but management officials indicated they would write such letters and that no disciplinary action would be taken against Allen until he returned from vacation. One of the other signatories was told that a disciplinary letter would be placed in his personnel file. When Allen returned from vacation, he was given a choice of resigning or being fired. He chose to resign.

On the basis of the foregoing evidence, the Board (in agreement with the Administrative Law Judge who heard the evidence) found that sending the letter to legislators to protect the job security of Society members and their fellow engineers constituted protected concerted activity within the meaning of § 7 of the Act; that Kaiser Engineers' action in bringing about Allen's resignation, as the one chiefly responsible for drafting and sending the letter to legislators on behalf of the Society, constituted a violation of § 8(a)(3) and § 8(a)(1) of the Act, and, further, that by interrogating employees concerning their protected activity and by threatening reprisals for their having engaged in such activity, Kaiser Engineers interfered with, restrained and coerced its employees in violation of § 8(a)(1) of the Act.

Section 7 of the Act, 29 U.S.C. § 157, provides that:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ."

Section 8(a)(1) provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."

---

1. the body of the letter read as follows:

"We write on behalf of a group of about 70 civil engineers at Kaiser Engineers. It has come to our attention that Bechtel Corp. is seeking authorization from the Dept. of Labor to obtain resident visas for any engineers they may recruit outside the country. We realize that at the minute engineers are in demand. However, to import engineers at his time of boom will be extremely short-sighted for as the market is bound to ease, engineers will be made redundant, and we could have conditions that existed immediately after the big cut-back in the aerospace industry recently. Engineers as a profession are not well organized at present and so cannot influence such matters as, say, the unions or the AMA can. So it is to our legislators that we must look for some protection from the indiscriminate importation of engineers by large companies. We hope that you can exert some influence on our behalf."

The letter bore the return address of "Civil Engineering Society (KE), Kaiser Engineers" at the corporate headquarters street address.

Section 8(a)(3) provides that it shall be an unfair labor practice for an employer "to encourage or discourage membership in any labor organization" by means of "discrimination in regard to hire or tenure of employment . . . ."

The Board's order requires Kaiser Engineers to cease and desist from the unlawful conduct found, to offer Allen reinstatement and back pay, and to post appropriate notices announcing compliance with the Board's order.

■ On review the findings of the Board with respect to questions of fact shall be conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

*Re Finding That Allen Was Not a Supervisor*

Kaiser Engineers first challenges the finding that Allen was an employee entitled to protection under § 7 of the Act, contending that he was a supervisor within the meaning of § 2(11) and, thus, not entitled to such protection; that the above-mentioned finding is not supported by substantial evidence in the record considered as a whole.

The right of concerted activity, guaranteed by § 7 of the Act, is conferred only upon employees, not on supervisors, within the meaning of § 2(11), which defines the term "supervisor" as:

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Two cases decided by this court have dealt with this Section 2(11) definition of supervisor.

Our decision in *N. L. R. B. v. Fullerton*, 283 F.2d 545 (9th Cir. 1960) was to the effect that § 2(11), defining "supervisor," is to be read in the disjunctive and that *any* of the enumerated powers is sufficient to render an employee a supervisor. In that decision, we also clarified the term "responsibly" in the statutory phrase "responsibly to direct" as follows:

"To be responsible is to be answerable for the discharge of a duty or obligation. Responsibility includes judgment, skill, ability, capacity, and integrity, and is implied by power." 283 F.2d at 549.

We there concluded that a county news editor, who was fully accountable and responsible for the performance and work product of the reporters in his department, and who exercised independent judgment in assigning the work within his department, *was* a supervisor within the meaning of § 2(11).

On the other hand, our decision in *N. L. R. B. v. Doctors' Hospital of Modesto*, 489 F.2d 772 (9th Cir. 1973) was to the effect that highly trained professional registered nurses who assign and direct auxiliary personnel, such as licensed vocational nurses and nurses aides were *not* supervisors under § 2(11) of the Act, stating that

The leadman or straw boss may give minor orders or directives or supervise the work of others, but he is *not necessarily* a part of management and a "supervisor," within the Act. The fact that nurses are highly trained professionals and occasionally use independent judgment does *not necessarily* make them part of management or "supervisors" under the Act. 489 F.2d at 776 [emphasis in original].

■ Where, as here, the specific issue involves the application of a broad statutory term ("supervisor"), the Board is called upon to exercise its "special function of applying the general provisions of the Act to the complexities of industrial life." *N. L. R. B. v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963). Courts usually defer to the Board's expertise in applying statutory terms to particular facts. *Hanna Mining Co. v. Ma-*

*rine Engineers*, 382 U.S. 181, 190, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965). Such deference seems particularly appropriate in cases involving the § 2(11) definition of "supervisor," since

"the gradations of authority 'responsibly to direct' the work of others from that of general manager or other top executive to 'straw boss' are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor.'" *Marine Engineers Beneficial Ass'n v. Interlake Steamship Co.*, 370 U.S. 173, 179 n. 6, 82 S.Ct. 1237, 1240, 8 L.Ed.2d 418 (1962), quoting with approval from *N. L. R. B. v. Swift & Co.*, 292 F.2d 561, 563 (1st Cir. 1961).

In the pending case, the Administrative Law Judge specifically found that, according to Allen's "creditable testimony", he did not exercise, nor was he authorized to exercise, any supervisory functions; that Allen did not have authority effectively to recommend to his supervisor action with respect to employees in his group;[2] and that, although Kaiser Engineers maintains a schedule of admitted supervisors with their authority set forth in detail, there was no similar written evidence introduced to indicate that Allen was delegated any supervisory function.

■ It appears from evidence in the record that Allen was responsible for directing the five to seven employees (three to four engineers and two to three draftsmen) in his group within the structural design of the aluminum projects department of the Engineering Division in such manner as, in his judgment, would achieve successful completion of the project delegated to him.

It also appears from the evidence, however, that Vice-President Mauser testified in the hearing before the Administrative Law Judge that he considered even Allen's supervisor only to be "comparable to what is normally termed leadman in the power engineering field."

Although the evidence may be subject to different inferences, we cannot say, on the record considered as a whole, that the Board abused its discretion in finding that Allen was not a supervisor nor can we say that the findings of the Administrative Law Judge are unsupported by substantial evidence. We conclude, therefore, that substantial evidence on the record considered as a whole does support the Board's finding that Allen was not a supervisor and that such finding has a reasonable basis in law.

*Re Finding That the Concerted Activity Here in Question Was Protected Under § 7*

It remains to consider Kaiser Engineers' further contention that the concerted activity of employees lobbying legislators in opposition to a proposed change in national immigration policy was not "for mutual aid or protection" within the meaning of § 7. Kaiser Engineers contends that protected activity under § 7 is limited to activity taking place within the employer-employee relationship and relating to the terms and conditions of employment.

In support of this contention, Kaiser Engineers relies on *N. L. R. B. v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962); *N. L. R. B. v. Tanner Motor Livery Ltd.*, 419 F.2d 216 (9th Cir. 1969), and *G & W Electric Specialty Co. v. N. L. R. B.*, 360 F.2d 873 (7th Cir. 1966).[3]

---

**2.** The Administrative Law Judge apparently rejected the testimony of Mauser, Vice-President of Kaiser Engineers, to the effect that Allen did have authority to recommend to his supervisor matters affecting the employees under his direction. The Administrative Law Judge specifically found that, on the one occasion on which Allen did make a recommendation to his supervisor with respect to one of his group, the recommendation was not acted on. (Tr. of R. pp. 13–14).

**3.** In *Washington Aluminum, supra*, the Supreme Court indicated that the policy behind § 7 was "to protect the right of workers to act together to better their working conditions" but that § 7 does not protect concerted activity that is unlawful, violent, in breach of contract, or disloyal to the employer. The court held

There are, however, other cases supporting extension of § 7 protection beyond the strict confines of the employment relationship.[4]

It is true, as Kaiser Engineers points out, that the activity involved no request for action on the part of the company, did not concern a matter over which the company had direct control, and was outside the strict confines of the employment relationship. It is also true, however, that the members of the Civil Engineering Society had a legitimate concern in national immigration policy insofar as it might affect their job security.

■ We conclude that the concerted activity of employees, lobbying legislators regarding changes in national policy which affect their job security, can be action taken for "mutual aid or protection" within the meaning of § 7, and that the Board's finding upon the evidence herein is supported by substantial evidence on the record considered as a whole and has a reasonable basis in the law.

*Re Finding that Discharge Violated § 8(a)(3)*

Kaiser Engineers next contends that, even if the activity in which Allen engaged was protected under § 7, no evidence supports the Board's finding that it violated § 8(a)(3) by discharging Allen; that the illegal motivation requisite for an 8(a)(3) violation was not proven; that Kaiser Engineers came forward with substantial evidence that Allen's discharge was for a legit-

---

that a walkout by non-union employees in protest against the lack of heat in their workshop was protected activity under § 7.

In *Tanner Motor Livery, supra,* this court stated that the mutual aid clause of § 7 protects concerted activities, which have to do with terms and conditions of employment. We held that the concerted activities of white employees in opposition to their employer's racially discriminatory hiring policies were within the protection of § 7.

In *G & W Electric Specialty, supra,* the 7th Circuit held that an employee, discharged for mobilizing his fellow workers in support of his effort to eradicate claimed abuses in the administration of an employee-established credit union, was not protected activity under § 7. The court based its holding on the fact that the activity involved no request for action on the part of the employer and did not concern a matter over which the employer had control, and on the further fact that the claims in question arose from the protestors' status as depositors in or borrowers from the credit union and not from their status as employees.

4. In *N.L.R.B. v. Peter Cailler Kohler Swiss Chocolates Co.,* 130 F.2d 503 (2d Cir. 1942), the court held that passage of a union resolution, which condemned the employer's opposition to a strike by a farmers' association, constituted activity protected under § 7. Judge Learned Hand, writing for the court, pointed out that, by passing the resolution, the employees were making "common cause" with the striking farmers and that, even though "the immediate quarrel does not itself concern them" they were, nonetheless, engaged in concerted activity for "mutual aid or protection," saying

[a] union may subsidize propaganda, distribute broadsides, support political movements, and in any other way further its cause or that of others whom it wishes to win to its side. Such activities may be highly prejudicial to its employer; his customers may refuse to deal with him; he may incur the enmity of many in the community whose disfavor will bear hard upon him; but the statute forbids him by a discharge to rid himself of those who lay such burdens upon him. Congress has weighted the conflict of his interest with theirs, and has *pro tanto* shorn him of his powers. 130 F.2d at 506.

In *Bethlehem Shipbuilding Corp. v. N.L.R.B.,* 114 F.2d 930 (1st Cir. 1940), the court held that the right of employees to engage in concerted activities, guaranteed by § 7, is not limited to direct collective bargaining, but extends to other activities for mutual aid or protection—including appearance of employee representatives before legislative committees. In that case, an employee organization had passed a resolution giving public endorsement to a bill in the state legislature concerning changes in the workmen's compensation law, an endorsement to which management objected.

In *N.L.R.B. v. J. G. Boswell Co.,* 136 F.2d 585 (9th Cir. 1943) this court held that discharge of an employee because she expressed sympathy toward employees striking another company was a violation of § 8(a)(3), stating that "the fact that the alleged union activity extends 'outside his own employment,' is immaterial."

See also *Fort Wayne Corrugated Paper Co. v. N.L.R.B.,* 111 F.2d 869 (7th Cir. 1940); *Signal Oil & Gas Co. v. N.L.R.B.,* 390 F.2d 338 (9th Cir. 1968); *N.L.R.B. v. General Electric Co.,* 411 F.2d 750 (9th Cir. 1969); *N.L.R.B. v. Swain and Morris Constr. Co.,* 431 F.2d 861 (9th Cir. 1970) and *Salt River Valley Water Users' Ass'n v. N.L.R.B.,* 206 F.2d 325 (9th Cir. 1953).

imate business reason, i. e., that the writing of the letter to legislators indicated negligence and a lack of the judgment necessary to carry out his duties as an employee of Kaiser Engineers.

■ It is true that an employer's motive for engaging in discriminatory conduct which has the effect of encouraging or discouraging membership in any labor organization, is a relevant factor on the question of whether or not § 8(a)(3) has been violated. *Radio Officers v. N.L.R.B.*, 347 U.S. 17, 44, 74 S.Ct. 323, 98 L.Ed. 455 (1953).

■ The test for determining whether, and to what extent, improper motive may be inferred is well set forth in *N.L.R.B. v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967), where the court said:

> If it can reasonably be concluded that the employer's discriminatory conduct was "inherently destructive" of important employee rights, no proof of an antiunion motive is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business consideration. Second, if the adverse effect of the discriminatory conduct on employee rights is "comparatively slight," an antiunion motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial business justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in discriminatory conduct which could have adversely affected employee rights to *some* extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him.

■ Thus, although an employer may come forward with evidence of a legitimate business justification for conduct which is "inherently destructive," such claimed business purpose will not justify the discrimination where the Board concludes that the interests of employees in concerted activity outweigh the interests of the employer in operating his business in a particular manner, and where the intended consequences upon employee rights, when considered in light of the Act and its policy, are more important than the business ends to be served by the employer's conduct. *N.L.R.B. v. Erie Resistor Corp.*, 373 U.S. 221, 229, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963).

■ The ultimate problem is the balancing of conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review. See *Erie Resistor, supra*, 373 U.S. at 236, 83 S.Ct. 1139.

[11] Where discriminatory conduct is directly related to protected activity as the Administrative Law Judge here found, such conduct is inherently destructive and an inference of improper motive is warranted, as we held in *Signal Oil & Gas Co. v. N.L.R.B.*, 390 F.2d 338, 343, 344 (9th Cir. 1968).

■ In the pending case Kaiser Engineers has come forward with evidence which, they claim, justifies the discrimination. However, we cannot say that the Board abused its discretion in rejecting this claimed justification.

Accordingly, we conclude that the finding of a violation of § 8(a)(3) is supported by substantial evidence on the record considered as a whole and has a reasonable basis in law.

The petition to set aside the Board's order is hereby denied, and enforcement of the Board's order is hereby decreed.

ANTHONY M. KENNEDY, Circuit Judge (dissenting):

I do not agree with the majority that the Civil Engineering Society's lobbying with regard to national immigration policy was a protected activity under the Labor Act. Section 7 primarily protects concerted activities by employees seeking to affect the way in which their own employer treats

them. Thus as a general rule, the activity must concern "a matter with respect to which the employer had the power and right to do something about." *G & W Electric Specialty Co. v. NLRB*, 360 F.2d 873, 876 (7th Cir. 1966). Our court has adopted a similar test, that a protected activity must seek a specific remedy for a work-related complaint or grievance. *Shelly & Anderson Furniture Manufacturing Co. v. NLRB*, 497 F.2d 1200, 1202–03 (9th Cir. 1974).

It is true that section 7 protects "other concerted activities for . . . mutual aid or protection." This has been held to include activities not directed at the immediate employer but in sympathy with a legitimate labor dispute involving some other group of employees. *E.g., NLRB v. J. G. Boswell Co.*, 136 F.2d 585 (9th Cir. 1943). I do not believe the "mutual aid or protection" rationale of such cases should be extended to cover activities directed, not at fellow workers' employers, but at public agencies.

Moreover, even if the Society's political lobbying would otherwise be protected, there is a well-recognized exception for acts disloyal to the employer's commercial interest. *NLRB v. IBEW Local 1229*, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953), *cited in NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 17, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962); *NLRB v. Red Top, Inc.*, 455 F.2d 721, 727 (8th Cir 1972). The Society used letterhead stationery identifying itself with Kaiser Engineers and bearing the company's corporate address. The position taken in the letters was contrary to a policy the company deemed critical to its operations in foreign countries. I would not hold that the company is powerless to discourage its own employees from undertaking such detrimental activities.

For these reasons, I would deny enforcement of the Board's order.