944 F.2d 909
 141 L.R.R.M. (BNA) 2664
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ALASKA PULP CORPORATION, Respondent.
 No. 90-70614.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 21, 1991.
Decided Sept. 18, 1991.
 
 Before TANG, REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board (NLRB or Board) issued a Decision and Order against Alaska Pulp Corporation after finding that the corporation engaged in unfair labor practices relating to the reinstatement of strikers. The NLRB petitions this court for enforcement of its Order pursuant to 29 U.S.C. § 160(e).[1] We grant the Board's petition for enforcement.
 
 I.
 
 3
 United Paperworkers International Union, Local 962 ("Union") represented production and maintenance employees of Alaska Pulp Corporation ("Company"). The Union members went on strike on July 11, 1986. Alaska Pulp filled their positions with permanent replacements and returning strikers. In March 1987, the NLRB conducted a decertification election. The Board decertified the Union on April 7, 1987. That same day the striking employees abandoned the strike.
 
 
 4
 The Company's reinstatement plan ranked the former strikers within their former departments by merit criteria and placed them on a preferential hiring list. The highest-ranked strikers were offered entry-level positions. Vacancies in higher positions were closed to returning strikers, even those who had held such positions before the strike.
 
 
 5
 The Company excluded strikers Mark Simmons, Debbie Harriman, and Shawn McLeod from the preferential hiring list, alleging that they had engaged in strike-related misconduct. In October 1987, the Company caused its contractor, S & S General Contractors and Equipment Rental, to discharge Edward Reiner, a former Alaska Pulp employee who had participated in the strike. In November, the Company discharged reinstated striker Robert Kinville for allegedly disruptive behavior at work.
 
 
 6
 During the strike, in August 1986, striker Florian Sever, a member of the Union's public relations committee, wrote two letters critical of the Company to Alaska Pulp's management in Japan and to various newspapers. Following the strike, Sever was placed on the preferential hiring list. On May 1, 1987, Jess Cline, vice president of Alaska Pulp, wrote to Sever asking him to notify the Company by June 7 if he wished to remain on the list. On May 19, Sever testified at congressional hearings on pending legislation known as the "Tongass Timber Reform Act." The Company, which was aware of Sever's testimony, opposed this legislation which would affect its federal lease of timbering rights in the Tongass National Forest. Sever criticized the Company's treatment of its employees and its failure to use its timbering rights to benefit the people of the area. He urged Congress to monitor more closely the Company's practices and to cut federal subsidies to the Company.
 
 
 7
 On June 3, Sever notified the Company of his desire to remain on the preferential hiring list. On June 30, Cline informed Sever that he was ineligible for the list because he had abandoned his job and accepted equivalent employment elsewhere, and because of "bona fide business necessity." When Sever requested further explanation, Cline notified Sever that the Company knew of his employment elsewhere and of his "statements and activities destructive to the Company and related logging operations."
 
 
 8
 In the proceedings below, an administrative law judge (ALJ) found that Alaska Pulp committed unfair labor practices by discriminating against striking union members in violation of Section 8(a)(1) and (3) of the National Labor Relations Act (NLRA) in the following ways: (1) by excluding Simmons, Harriman and McLeod from the preferential hiring list, by firing Kinville, and by causing S & S to discharge Reiner; (2) by reinstating former strikers only to entry-level positions; and (3) by removing Sever from the preferential hiring list. The ALJ ordered Alaska Pulp to include the employees named above on the preferential hiring list, reinstate them and compensate them for any loss of pay and benefits caused by its discrimination. It further ordered that Alaska Pulp offer reinstatement to appropriate positions to qualified employees on the preferential list who were improperly reinstated. The Board adopted the ALJ's findings and now seeks enforcement of the order. Alaska Pulp seeks limited review of the decision only as to parts (2) and (3) listed above.
 
 II.
 
 9
 We must enforce the Board's Order if the Board correctly applied the law and its findings of fact are supported by substantial evidence. NLRB v. Nevis Industries, Inc., 647 F.2d 905, 907 (9th Cir.1981). We give considerable deference to the Board's interpretation of the Act. Id.
 
 III.
 
 10
 This case presents three principal issues. The first question we must address is whether the Company violated the NLRA in its treatment of Simmons, Harriman, McLeod, Kinville, and Reiner. The Company does not contest the Board's findings with respect to these employees. This constitutes a waiver. See Nevis Industrs., 647 F.2d at 908. Where the Board's findings of violations are uncontested, that part of its order relating to those violations is entitled to enforcement. NLRB v. Ed Chandler Ford, Inc., 718 F.2d 892, 894 (9th Cir.1983). Accordingly, we enforce that portion of the Board's Order relating to the treatment of Simmons, Harriman, McLeod, Kinville, and Reiner.
 
 
 11
 The second issue stems from the Board's finding that the Alaska Pulp engaged in unfair labor practices by offering only entry level positions to former strikers. The Company does not challenge the substance of the Board's findings. Instead, it argues that section 10(b) of the NLRA precludes a finding of a violation because the complaint was not filed within the statute of limitations.
 
 
 12
 Section 10(b) provides in pertinent part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge ..." 29 U.S.C. § 160(b). The charge in this case was filed in August 1987. The Company contends that the limitations period expired in March 1987 because its vice president, Jess Cline, notified the Union of the reinstatement scheme in September of 1986. We reject the Company's contention. "The limitation period [of section 10(b) ] does not begin to run until the party filing the charge receives actual notice that an unfair labor practice has occurred." NLRB v. International Brotherhood of Electrical Workers, Local 112, 827 F.2d 530, 533 (9th cir. 1987) (emphasis added). Section 10(b) is not triggered by a company's notice that it intends to commit an unfair labor practice. Id.
 
 
 13
 We find substantial evidence to support the Board's finding that the limitation period of section 10(b) did not begin to run until after the strike ended. While an adverse employment decision communicated to employees may under some circumstances trigger the six month period, see Barton Brands Ltd., 298 NLRB N. 139 (1990), Cline's "confusing and contradictory" statements did not do so. The unfair labor practice of offering only entry level positions to former strikers who had worked in higher positions did not occur until after April 7, 1987, the date the strike ended. We therefore enforce the portion of the Board's Order against Alaska Pulp regarding this discriminatory rehiring practice.
 
 
 14
 The third and final issue in this case concerns Alaska Pulp's removal of Florian Sever from the preferential rehiring list. The ALJ found that Sever's letter of August 19, 1986 was a "substantial cause" of the Company's denial of reinstatement to Sever. In adopting the ALJ's findings, the Board added that "Sever was denied reinstatement not only for his protected concerted activity in writing the August 19 letter, but also for his protected activities on behalf of the Union and in support of legislation that [Alaska Pulp] considered inimical to its interests, and that formed the substance of his congressional testimony." 296 NLRB No. 155, 6.
 
 
 15
 Here, the Company does not dispute that the August 19 letter was a reason for Sever's dismissal, but asserts that the writing of the letter does not constitute a "protected activity" under the NLRA. Furthermore, although it took the contrary position in the proceedings below, Alaska Pulp now accepts the Board's determination that the congressional testimony was a substantial factor in the decision not to reinstate Sever. It now argues, however, that his testimony before Congress was also not protected activity.[2]
 
 
 16
 Alaska Pulp contends that the August 19 letter was not protected activity because "[t]he bulk of the comments made in the letter were not directly related to employee job interests and were at best peripheral to terms and conditions of employment." Respondent's Brief at 22. The Board found that Sever "wrote the letter to elicit community support for the strike" and to persuade Company officials to "become more sympathetic toward the Union's concerns." Administrative Law Judge Decision at 23-24. The Board's finding is supported by substantial evidence. The August 19 letter was written by Sever during the strike in his capacity as the Union's public relations director and was submitted for publication to local newspapers. The letter also explicitly attempted to create a favorable public perception of the strike and the Union, by refuting allegations that the Union had not honored earlier agreements in conducting negotiations. The United States Supreme Court has held that such an appeal, "made outside the immediate employer-employee relationship," is protected activity where it "seek[s] to improve terms and conditions of employment or otherwise improve employees' lot." Eastex, Inc. v. NLRB, 437 U.S. 556, 565 (1978).
 
 
 17
 The Company seeks to strip Sever's activity of its protected status by alleging that his references to the Company's Japanese management were "disparaging" and "racist." The Board did not agree with this characterization; neither do we. Moreover, as the ALJ noted below, the letter is not "so disloyal, reckless or maliciously untrue" as to deny it protection under the Act. Therefore, we conclude that the Board justifiably found that the letter was protected activity and that Sever's removal from the rehiring list for writing it constituted an unfair labor practice.
 
 
 18
 With respect to Sever's congressional testimony, we also agree with the Board's decision and order. First, Alaska Pulp may not argue now that Sever's testimony is unprotected, as it failed to raise that issue before the Board. In fact, it took the opposite position at the hearing before the ALJ. Section 10(e) of the Act, 29 U.S.C. Sec. 160(e), states that upon petition for enforcement, "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." If the Company disagreed with the Board's finding, its remedy was to file a motion for reconsideration within 28 days of the issuance of the decision as provided for by 29 C.F.R. 102.48(d)(1). The Company in fact attempted to file such a motion 56 days after the decision, but the Board denied it as untimely. The Company showed no extraordinary circumstances accounting for its failure to file a timely motion. The Company's failure to file a timely motion prevents consideration of the question by this court. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645 (1982); International Ladies Garment Workers' Union v. Quality Mfg. Co., 420 U.S. 276 (1975).
 
 
 19
 In any event, we find the Company's arguments unpersuasive on the merits. There is substantial evidence to support the Board's finding that the testimony was protected activity. "Sever appeared as a representative of the Union and testified concerning alleged abuses by [Alaska Pulp] under existing legislation and the effect it had on employees' terms and conditions of employment." 296 NLRB No. 155, 5, n. 8. Sever testified that he appeared before Congress because various legislators and politicians advised him that his best chance for "justice" was on the national level. Thus, we have no doubt that Sever's congressional testimony is protected activity. Cf. Kaiser Engineers v. NLRB, 538 F.2d 1379 (9th Cir.1976) (concerted action by employees in lobbying legislators regarding national policy issues which affect their job security can be considered action for "mutual aid or protection," which is protected under Section 7 of the Act).
 
 
 20
 The record clearly supports the Board's Decision and Order in every respect. Accordingly, we enforce the NLRB's Order in its entirety.
 
 
 21
 ENFORCED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 29 U.S.C. § 160(e) provides, in pertinent part: "The Board shall have power to petition any court of appeals of the United States ... for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2122 of Title 28.... The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive
 
 
 [2]
 The Company does not contest the Board's determination that Sever's employment elsewhere during the strike did not constitute the "substantially equivalent employment" required to justify his removal from the rehiring list